## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| GRETA WASHINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case Number: 4:16-cv-00850-JHE |
| | ) | |
| COMMISSIONER OF THE SOCIAL | ) | |
| SECURITY ADMINISTRATION | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

Plaintiff Greta Washington ("Washington") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her application for Supplemental Security Income. ("SSI"). (Doc. 1). Washington timely pursued and exhausted her administrative remedies. This case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

### I. Factual and Procedural History

Washington protectively filed her application for SSI on February 21, 2013, alleging she became unable to work beginning November 1, 2010.[2] (Tr. 43, 168-172). The Agency initially

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 16).

[2] Because an individual cannot receive SSI for any period prior to the month in which he or she files an application, 20 C.F.R. §§ 416.330, 416335, February 2013 is the relative beginning date to consider whether Washington has been under a disability.

denied Washington's application (tr. 43, 107-17), and Washington requested a hearing (tr. 43, 128-30) where she appeared on August 11, 2014 (tr. 43, 60-106). After the hearing, the Administrative Law Judge ("ALJ") denied Washington's claim on October 31, 2014. (Tr. 40-59). Washington sought review by the Appeals Council, but it declined her request on March 21, 2016. (Tr. 1-7). On that date, the ALJ's decision became the final decision of the Commissioner. On May 24, 2016, Washington initiated this action. (*See* doc. 1).

Born in 1968, Washington was forty-seven-years old when the ALJ denied her claim. (Tr. 55, 168). She has a GED (tr. 208), and previously worked as a fast food cashier, cleaner, packer, and at a plant nursery (tr. 209). Washington alleges disability due to a dislocated shoulder, heel spurs, arthritis, high blood pressure, bad ankles, left side constantly hurts, carpal tunnel, and back pain. (Tr. 207). Washington states she stopped working on November 1, 2010, because of her condition. (*Id.*).

## II. Standard of Review[3]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate

---

[3]In general, the legal standards applied are the same whether a claimant seeks Disability Insurance Benefits ("DIB") or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence. "Substantial evidence may even exist contrary to the findings of the ALJ, and [the reviewing court] may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned." *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991). However, the Court reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[4] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

---

[4]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;
(2)     whether the claimant has a severe impairment;
(3)     whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4)     whether the claimant can perform his or her past work; and
(5)     whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

### IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Washington had not engaged in substantial gainful activity since February 21, 2013, the application date. (Tr. 45). At Step Two, the ALJ found Washington has the following severe impairments: plantar fasciitis (heel pain) NOS, chronic left hip pain, bilateral carpal tunnel syndrome (CTS), depression, and anxiety. (*Id.*). At Step Three, the ALJ found Washington did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr.

4

45-47).

Before proceeding to Step Four, the ALJ determined Washington's residual functioning capacity ("RFC"), which is the most a claimant can do despite her impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined that Washington had the RFC to perform light work as defined in 20 C.F.R. 416.967(b), with certain exertional and non-exertional limitations. (Tr. 47-53).

At Step Four, the ALJ determined Washington is unable to perform any past relevant work. (Tr. 53). At Step Five, the ALJ determined, based on Washington's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy Washington could perform. (Tr. 53-54). Therefore, the ALJ determined Washington has not been under a disability and denied her claim. (Tr. 54-55).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Here, substantial evidence supports the ALJ's determination Washington failed to demonstrate a disability, and the ALJ applied the proper standards to reach this conclusion. Washington challenges the Commissioner's decision on eight grounds. (*See* doc. 10 at 1-2, 4). These challenges will be addressed as follows: (A) challenges based on lack of substantial

evidence: (1) Dr. Herrera's opinion and (2) the ALJ's RFC assessment; (B) challenge to finding regarding severe impairments; (C) evaluation of Washington's subjective complaints: (1) credibility assessment, (2) SSR 16-3p, and (3) lack of medical treatment; and (D) challenges related to the Appeals Council.

## A.  Challenge to Dr. Herrera's Opinion and the ALJ's RFC Assessment

### 1.  Dr. Herrera's Opinion

Washington asserts that the ALJ improperly considered Dr. Pascual Herrera's opinion in assessing Washington's residual functioning capacity ("RFC").  (Doc. 10 at 17-20).  An ALJ considers numerous factors when evaluating a doctor's opinion, including whether the doctor examined the claimant, whether the doctor treated the claimant, the evidence the doctor presents to support his or her opinion, whether the doctor's opinion is consistent with the record as a whole, and the doctor's specialty. See 20 C.F.R. § 416.927(c). A treating doctor's opinion generally is entitled to more weight, and an ALJ must give good reasons for the weight given a treating doctor's opinion. *See* 20 C.F.R. § 416.927(c)(2); *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). However, an ALJ may discount a doctor's opinion, including a treating doctor's opinion, when the opinion is conclusory, the doctor fails to provide objective medical evidence to support his or her opinion, the opinion is inconsistent with the record as a whole, or the evidence otherwise supports a contrary finding. See 20 C.F.R. § 416.927(c); *Crawford*, 363 F.3d at 1159-60.

Moreover, although doctors' opinions about what a claimant can still do or the claimant's restrictions are relevant evidence, such opinions are not determinative because the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. §§ 416.912(b)(2), 416.913(b)(6), 416.927(d)(2), 416.945(a)(3), 416.946(c); SSR 96-5p, 1996 WL 374183 (July 2, 1996). *See also*

*Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's [RFC] is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive").

Specifically, Washington argues the ALJ erred because Dr. Herrera "stated the claimant had limitations which precluded employment." (Doc. 10 at 17-20). This argument is unavailing. As noted, statements regarding a claimant's RFC or that a claimant is "disabled" or "unable to work" are not medical opinions; they are administrative findings within the ALJ's discretion and entitled to no special deference. *See* 20 C.F.R. § 416.927(d); *Herron v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 781, 786 n.5 (11th Cir. 2016). Additionally, Dr. Herrera's treatment records do not support such a conclusion, as they document unremarkable examinations and conservative treatment (e.g., medication therapy for diabetes and neuropathy and his finding that Plaintiff had some decreased pinprick sensation in the legs but her feet were normal and she had no gait disturbance) (Tr. 52-53, 376-382, 391-395, 402-03) and do not support his statements regarding limitations. See 20 C.F.R. § 416.927(c)(3), (c)(4). Moreover, as the ALJ noted, the overall objective medical evidence showed no significant limitations associated with her diabetes mellitus (Tr. 52).

Washington fails to address the ALJ's discussion of Dr. Herrera's opinion, simply arguing Dr. Herrera was a treating physician whose opinion "is entitled to greater weight." (Doc. 10 at 17-18). A review of the ALJ's opinion and Dr. Herrera's treatment records shows that the ALJ assessed Dr. Herrera's opinion based on proper regulatory factors. *See* 20 C.F.R. § 416.927(c). The ALJ noted Dr. Herrera was a treating physician and found his opinion was inconsistent with the overall record and was not supported by his own records, which are proper considerations. (Tr. 52). *See* 20 C.F.R. § 416.927(c)(2), (3), (4). The ALJ also found Dr. Herrera's opinion was

unexplained and therefore conclusory. (Tr. 53). *See* 20 C.F.R. § 416.927(c)(4). The ALJ explained:

> He rates her pain level as moderate. Nevertheless, his brief record of treatment certainly does not disclose why his limitations are so drastic, especially with regards to sitting, walking, etc. He opines "no sitting and one hour of standing and walking" but then states she can "sit up to two hours in a day". There is no reconciling his limitations to any consistent pattern. Dr. Herrera also limits [Washington] to a six-hour workday but he fails to provide a rationale for his opinion.

(Tr. 53). Washington ignores these findings in her brief. (*See* doc. 10 at 17-20).

Washington also cites diagnoses and symptoms and argues Dr. Herrera's opinion is entitled to greater weight. (Doc. 10 at 18). This argument misses the point. The issue is not whether there are facts that support an opinion different from the ALJ's; the issue is whether there is substantial evidence to support the ALJ's decision, which there is as explained in the ALJ's decision and above. (Tr. 45-53). *See* 42 U.S.C. § 405(g); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005); *Wilson*, 284 F.3d at 1221. This argument also ignores the fact the ALJ found Washington's subjective complaints "not entirely credible," as discussed *infra*.

Washington's argument that the ALJ failed to provide "good cause" for according diminished weight to Dr. Herrera's opinion (doc. 10 at 18-20) lacks support. The ALJ extensively explained his evaluation of Dr. Herrera's opinion and explained his reasons for according only "partial weight" to his opinion. (Tr. 52-3). Essentially, the ALJ found Dr. Herrera's "opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records," which, as the Eleventh Circuit held in *Phillips*, is "good cause" to support the ALJ's decision. (Tr. 53). *Phillips*, 357 F.3d at 1240-41.

## 2. RFC Assessment

Washington next contends the ALJ's RFC determination is conclusory and violates Social

Security Ruling ("SSR") 96-8. (Doc. 10 at 32-35). A claimant's RFC is the most she can still do despite her limitations. *See* 20 C.F.R. §§ 416.920(e), 416.945(a)(1), (a)(3); SSR 96-8p, 1996 WL 374184 (July 2, 1996)). At the hearing level, the ALJ has the responsibility for assessing the claimant's RFC. *See* 20 C.F.R. § 416.946(c); SSR 96-5p, 1996 WL 374183 (July 2, 1996); *see also* 20 C.F.R. § 416.927(d)(2) (stating that the assessment of a claimant's RFC is an issue reserved for the Commissioner). Thus, "the task of determining a claimant's [RFC] and ability to work is within the province of the ALJ, not of doctors." *Robinson*, 365 F. App'x at 999.

The ALJ properly considered the relevant evidence in assessing Washington's RFC (Tr. 47-53). *See* 20 C.F.R. §§ 416.927(c), 416.945(a)(3); SSR 96-8p, 1996 WL 374184 at *5; SSR 96-7p, 1996 WL 374186 (July 2, 1996); *Wilson*, 284 F.3d at 1225-26. He found the objective medical findings did not indicate Washington was as limited as she claimed, and he provided substantial evidence to support his RFC finding. (Tr. 50-52).

For example, as the Commissioner points out, Washington alleged shoulder pain; however, the ALJ found the record shows only one ER visit in January 2004 for complaints of shoulder pain and dislocation. (Tr. 50). At the hearing, Plaintiff noted additional X-rays (tr. 64-5), but no additional X-rays were provided, and the ALJ found there were no shoulder treatment records after the 2004 ER visit. (Tr. 50 citing Exhibit 4F (Tr. 307-32)).

In April 2013, consultative examiner Ronald Borlaza, M.D. examined Washington, who reported left shoulder pain but stated she was taking only over-the-counter Tylenol or Advil. (Tr. 50, 341). Dr. Borlaza's examination revealed some decreased range of motion at the left shoulder with tenderness and moderate pain but was otherwise normal throughout. (Tr. 50, 343). Dr. Borlaza found Washington was limited to occasional reaching but had no limitations with handling, fingering, and feeling. (Tr. 50 citing Exhibit 7F (Tr. 344-45)). Moreover, the ALJ noted

that throughout the records from both Quality of Life and Dr. Herrera, Washington had no shoulder complaints. (Tr. 50 citing Exhibits 3F (Tr. 297-306), 8F (Tr. 346-367), 11F (Tr. 376-3820, and 13F - 15F (Tr. 391-404)).

Regarding Washington's allegations of left sided, low back, foot, and hip pain, the ALJ found little evidence to consider. (Tr. 50). For example, Dr. Borlaza's examination revealed Washington had normal gait without an assistive device. (Tr. 50, 342). "She took her shoes off and walked to the exam table with ease and without assistance. She did not use an assistive device to walk." (Tr. 342). She had full range of motion of the left hip but complained of pain. (Tr. 50, 343). She had normal range of motion of the lumbar spine, ankles, knees, cervical spine, wrist, and fingers. (Tr. 50, 343). Washington was right-handed with no muscle atrophy. (Tr. 50, 344). Dr. Borlaza assessed chronic left-shoulder pain due to history of dislocation, status post-surgery (1993) (tr. 344), bilateral carpal tunnel syndrome, and chronic left hip pain. (Tr. 50, 344). He opined Washington had no limitations with standing and sitting but was limited to walking six to eight hours (Tr. 50, 344). He limited her to occasional reaching and climbing but no limitations with climbing stairs, stooping, crouching, kneeling, and crawling (tr. 50, 344), and she should avoid hazards. (Tr. 50, citing Exhibit 7F (Tr. 340-45)).

The ALJ found the Quality of Life clinic records showed one visit in December 2009, for left ankle pain but no swelling with normal extremities. (Tr. 50, 299-300). Phillip Rogers, CRNP, prescribed medication (Mobic) and home exercise. (Tr. 50, 300). Washington returned January 2010. (Tr. 50, 301-02). An x-ray showed calcaneal heel spur (plantar fasciitis) with mild to moderate degenerative joint disease of the left ankle. (Tr. 50, 301). Nurse Rogers prescribed non-steroid anti-inflammatory medication ("NSAIDS"). (Tr. 50, 302). On her visit on June 10, 2013, Washington complained of heel, left arm, and back pain with radiation to the left thigh (Tr. 50).

She stated that she was not taking any prescribed medications (Tr. 51, 350). Examination showed positive straight leg raise test on the left and edema in the hands and feet. (Tr. 51, 350). However, a follow-up examination in July 2013, indicated negative straight leg raise test and minimal spasm to the back. (Tr. 51, 365). She had tenderness to the heel. (Tr. 51, 365). An x-ray was scheduled, but there is no evidence it was taken. (Tr. 51, 366).

The ALJ noted Washington sought no treatment and had no ER visits from July 2013 to March 2014. (Tr. 51). On March 8, 2014, Dr. Herrera treated Washington's complaints of left leg and left-sided pain. (Tr. 51, 382). Washington's examination was completely normal as well as were her examinations on March 22, 2014 and May 31, 2014. (Tr. 51, 381-82, 393). Medication adjustments were made, and her pain improved. (Tr. 51, 393). It was not until June 28, 2014, that Dr. Herrera noted a positive straight leg raise test on the left and decreased sensation in her legs. (Tr. 51, 394). However, in July 2014, her positive signs had returned to normal range. (Tr. 51, 402). She had normal gait with a negative straight leg raise test, and she used no assistive device (Tr. 51, 402). An x-ray of the lumbar spine showed transitional L5/S1 element with minor posterior fusion defect, minor underlying rotatory scoliosis with multi-level minor osteophytic spurring, and mild to moderate lower facet and SI joint degenerative joint disease. (Tr. 51, 403). Washington fails to show or even argue that the diagnostic imaging or other objective medical findings established that she had disabling limitations.

The ALJ considered that Dr. Herrera restricted Washington to sitting, standing, and walking two hours in an entire eight-hour day, occasionally push/pull with the lower extremities, and occasionally squat and crawl. (Tr. 52-53). He also noted, however, that throughout the treatment notes, Washington had no gait disturbance and used no assistive device. (Tr. 52 citing Exhibit 14F). The ALJ found that Washington's objective medical evidence showed no more than

mild to moderate symptoms that would limit her to occasionally climb ramps and stairs, crouch, kneel, and crawl but no ladders or scaffolds. (Tr. 52). Thus, the ALJ found that Washington's symptoms would not prevent all work activity and the medical record findings were consistent with the established RFC. (Tr. 52). Importantly, Washington raises no complaint regarding these ALJ findings and, therefore, waives argument on these issues. Washington also cites no evidence to undermine these ALJ findings. (Doc. 10 at 17-20). *See e.g.*, *Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006).

The ALJ also properly considered Washington's activities in evaluating her RFC. (Tr. 46, 49-50). For example, at step three, when applying the Psychological Review Technique ("PRT") (*see* 20 C.F.R. § 416.920a), the ALJ found Washington had "mild" limitations in activities of daily living. (Tr. 46). The ALJ also noted Washington reported to consultative examiner Dr. Borlaza that she cooks, bathes, dresses, and watches TV, and frequently reads. (Tr. 46, 341). Importantly, Washington raises no complaint regarding these findings. (Doc. 10 at 17-20, 32-38) and therefore waives all argument on those issues. *See Cunningham v. Dist. Att'y Office for Escambia Cnty.*, 592 F.3d 1237, 1254 n.9 (11th Cir. 2010); *Copher v. Comm'r of Soc. Sec.*, 429 F. App'x 928, 930 n.1 (11th Cir. 2011).

After consideration of the entire record, the ALJ found Washington had the following RFC:

to perform light work as defined in 20 CFR 416.967(b) with certain exertional and non-exertional limitations including: She would need an at will sit/stand option with the retained ability to stay on or at work station in no less than 30 minute increments each without significant reduction of remaining tasks. She can ambulate short distances up to 100 yards per instance on flat hard surfaces. The claimant could manipulate left foot controls frequently, and frequently manipulate hand controls bilaterally. She can reach overhead with her dominate hand frequently but only occasionally with her non-dominate left hand. She can reach in all directions frequently, bilaterally. She could occasionally climb ramps and stairs but not ladders or scaffolds. The claimant could frequently balance and stoop but only occasionally crouch, kneel, and crawl. She should avoid working around unprotected heights, dangerous tools, dangerous machinery or hazardous processes.

She cannot operate a commercial vehicle. The claimant could tolerate frequent exposure to humidity, wetness, atmospheric conditions, extreme heat and cold, but only tolerate occasional vibration and moderate noise levels. She is limited to routine and repetitive tasks and simple work-related decisions. She would be able to accept constructive non-confrontational criticism, work in small group settings, and be able to accept changes in the work place setting if introduced gradually and infrequently. In addition to normal breaks, she would be off task 5% of the time (nonconsecutive) in an 8-hour day.

(Tr. 47).

Washington's contention that the ALJ's RFC "is his own opinion and is conclusory" (doc. 10 at 18-19), is simply incorrect. A claimant's RFC is an issue reserved to the Commissioner and the ALJ's RFC assessment is an administrative finding based on the overall evidence. *See* 20 C.F.R. §§ 416.912(b)(2), 416.913(b)(6), 416.927(d), 416.945(a)(3), 416.946(c); SSR 96-5p, 1996 WL 374183 (July 2, 1996). *See also Beegle*, 482 F. App'x at 486; *Herron v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 781, 786 n.5 (11th Cir. 2016). It is the Commissioner's duty to weigh the evidence, resolve material conflicts and determine the case accordingly, as the ALJ did in this case. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *Watson v. Heckler*, 738 F.2d 1169, 1172 (11th Cir. 1984).

Washington's claim the ALJ's RFC is conclusory and contrary to SSR 96-8p (doc. 10 at 32-35), is also incorrect. The ALJ's RFC assessment is lengthy and explains in detail Washington's limitations as required in the regulations as explained above. *See* 20 C.F.R. § 416.945. Although the rationale for the ALJ's RFC is not specifically set out in the one-paragraph RFC assessment (tr. 47 Finding 4), his evaluation of the overall evidence and the basis for the RFC assessment are explained at length in the pages following the assessment. (Tr. 47-53). Washington ignores the ALJ's discussion and offers no record evidence to undermine the ALJ's basis for his assessment. Washington's assertion that "[t]he explanation given by the ALJ for not accepting the opinion of the treating physician was not adequate," (doc. 14 at 3) is supported by neither argument

nor evidence. Moreover, Washington cites no regulation requiring the ALJ to state the rationale for his or her RFC assessment in the actual RFC paragraph of the opinion (in this case Tr. 47, Finding 4). The ALJ's RFC complies fully with SSR 96-8p, and Washington's assertion to the contrary fails.

Additionally, citing *Thomason v. Barnhart*, 344 F. Supp. 2d 1326 (N.D. Ala. 2004), and *Coleman v. Barnhart*, 264 F. Supp. 2d 1007 (S.D. Ala. 2003), Washington appears to argue the RFC is not supported by substantial evidence because there was no opinion from a physician matching the limitations in the ALJ's RFC finding. (Doc. 10 at 33-34; *see also* doc. 14 at 2). As noted above, the RFC determination is an administrative determination reserved to the Commissioner, not a medical assessment. *See* 20 C.F.R. §§ 416.927(d), 416.946; SSR 96-5p, 1996 WL 374183. Additionally, the assessment of a claimant's RFC is based on all the relevant evidence and not simply a doctor's opinion. *See* 20 C.F.R. §§ 416.945(a)(3), 416.946(c); SSR 96-5p, 1996 WL 374183, at *5. Although physicians' opinions about what a claimant can still do are relevant evidence, such opinions are not determinative because the ALJ has the responsibility of assessing the claimant's RFC. *See* 416.912(b)(2), 416.913(b)(6), 416.927(d)(2), 416.945(a)(3), 416.946(c); *Beegle*, 482 F. App'x at 486. In *Langley v. Astrue*, 777 F. Supp. 2d 1250 (N.D. Ala. 2011), the court held that "[b]inding precedent in this Circuit does not require an RFC from a physician," and expressly declined to follow *Coleman*'s reasoning because it was "inconsistent with the Commissioner's regulations, Supreme Court precedent and unpublished decisions in this Circuit." *Id*. at 1258, 1260. The ALJ here properly considered the entire record and assessed Washington with the ability to perform a reduced range of light work (tr. 48-53), which is supported by substantial evidence.

**B. Step Two Finding Regarding Severe Impairments**

Washington next contends the ALJ failed to consider all of her severe impairments. (Doc. 10 at 20-21; doc. 14 at 3-4). This argument is not supported by the law. Although the ALJ did not discuss Washington's alleged post-traumatic stress disorder ("PTSD"), depressive disorder with psychotic features, diabetic retinopathy, hypertension, or fatigue, Washington did not allege these conditions were disabling either in claim forms submitted to the agency or in her hearing testimony (Tr. 67-96, 196-203, 201, 206-12, 223, 229). It was not until more than a year after the ALJ's decision that Washington's counsel sent a letter to the Appeals Council, which contained a listing of additional alleged impairments.[5] (Tr. 234-57). *See Kushnir v. Comm'r of Soc. Sec.*, No. 6:13-cv-711, 2014 WL 2860328, at *4 (M.D. Fla. June 23, 2014); *Mathis v. Colvin*, No. 8:12-civ-2072, 2013 WL 6498453, at *4-5 (M.D. Fla. Dec. 11, 2013). Moreover, diagnoses do not establish work-related limitations stemming from that condition. *See Moore*, 405 F.3d at 1213 n.6; *see also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). As Washington has identified no limitation caused by PTSD, depressive psychotic features, diabetic retinopathy, hypertension, or fatigue, the ALJ committed, at most, harmless error in not discussing these conditions. *See Winters v. Colvin*, No. 8:13-cv-290, 2014 WL 869105, at *7 (M.D. Fla. Mar. 5, 2014).

Furthermore, contrary to Washington's arguments (doc. 10 at 20-21; doc. 14 at 3-4), the ALJ considered and discussed Washington's alleged low back pain, (tr. 46, 48-51, 53), left

---

[5] The Appeals Council considered the reasons Washington disagreed with the ALJ's decision and found "that this information does not provide a basis for changing the [ALJ's] decision." (Tr. 2). Washington's counsel also submitted additional medical records to the Appeals Council. (Tr. 8-14, 19-22, 30-38). The Appeals Council stated: "[w]e also looked at [the medical records you provided]" and "[t]he Administrative Law Judge decided your case through October 31, 2014. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before October 31, 2014." (Tr. 2). *See also* discussion in Subsection D.

shoulder pain, (tr. 48, 50), and diabetes (tr. 49, 51-2), and made findings regarding these conditions. Washington raised no complaint regarding these findings and, therefore, waived argument on this issue. *See Rowe v. Schreiber*, 139 F.3d, 1381, 1382 n.1 (11th Cir. 1998) (in the absence of an argument, the issue is deemed abandoned).

Finally, as the Eleventh Circuit has stated, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe," provided the ALJ considered the claimant's impairments in combination. *See Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). *See also Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990); *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987); *Perry v. Astrue*, 280 F. App'x 887, 894 (11th Cir. 2008). This requirement results because, while no impairment considered alone may be disabling, the combined effect of the impairments may be enough to render a claimant disabled. *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984). In this case, the ALJ found Washington had severe impairments, as explained above (tr. 45 Finding 2). Then, at step three, the ALJ found Washington "does not have an impairment *or combination of impairments*" (emphasis added) that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App'x 1. (Tr. 45 Finding 3). *See* 20 C.F.R. § 416.920(a)(4)(iii). The ALJ's statement shows he properly considered the combined effect of Washington's impairments. *See Wheeler*, 784 F.2d at 1076. Washington has shown no error in the ALJ's step two finding of severe impairments.

## C. Evaluation of Washington's Subjective Complaints

Washington asserts three errors related to the ALJ's assessment of her subjective complaints. (Doc. 10 at 22-28, 30-32). Each will be addressed in turn.

### 1. Credibility Assessment

Washington claims the "ALJ failed to state adequate reasons for finding Claimant not

credible." (Doc. 10 at 22-24). As an initial matter, Washington's two-plus page argument consists almost entirely of citations to cases related to credibility determinations, without any citation to record facts in this case, with no discussion of how the cited cases apply to the facts here. (*See id.*: *see also* doc. 14 at 4-6 (reply brief)). Washington has not sufficiently developed this argument to allow for a proper response and has therefore waived this issue. *See Rowe*, 139 F.3d at 1382 n.1.

Regardless of waiver, and contrary to Washington's assertion, the ALJ cited record evidence and fully explained his "credibility" assessment. (Tr. 48-52). Initially, the ALJ set out a detailed discussion of Washington's testimony and allegations (tr. 48-49), about which Washington raises no complaint. (*See* doc. 10 at 22-24). The ALJ also considered Washington's allegations in comparison to her daily activities and stated:

> In spite of her alleged pain, the claimant has described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. She reported living alone and maintaining the household. She described preparing simple meals, cleaning and shopping in stores. . . . [S]he needs no assistance with daily activities and she is completely independent of personal care. . . . She indicated that she reads and watches TV most of the day. . . . Further, [Plaintiff] pays her bills and manages her finances. (Exhibits 1E and 7F) She also indicated that she reports to her probation officer on a regular basis. Based on the foregoing, the claimant's symptoms and subjective complaints are found not to be fully credible and are not consistent with the objective medical evidence and other evidence based on the requirements of 20 CFR § 416.1529.

(Tr. 49-50). Importantly, Washington does not complain about the ALJ's detailed summary of her allegations and does not criticize or even mention the ALJ's credibility assessment based on her daily activities. (Doc. 10 at 22-24; doc. 14 at 4-6; tr. 49-50). The record shows the ALJ properly considered Washington's activities of daily living. *See* 20 C.F.R. § 416.1529(c)(3)(i); *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987).

The ALJ also specifically discussed record evidence regarding Washington's alleged shoulder pain (tr. 50) and her allegations of left sided, low back, foot, and hip pain (tr. 50) as

explained above. He also discussed Washington's allegations of carpal tunnel syndrome, diabetes mellitus, depression and anxiety, and obesity (Tr. 51-52). In addition to the above, the ALJ found that:

> Overall, the evidence abundantly demonstrates that her pain is, at worst at a moderate level, which would limit her to an at-will sit/stand option and to ambulate short distances up to 100 yards per instance on flat hard surfaces. The claimant is also independent of activities of daily living and personal care. Therefore, the undersigned finds that the relevant evidence shows at worst moderate symptoms that would not prevent her from performing all work activity. These findings are consistent with the established residual functional capacity.

(Tr. 51). The ALJ also found Washington's symptoms related to diabetes would not prevent all work activity (tr. 52), that his findings regarding Washington's alleged anxiety and depression were consistent with the established RFC (tr. 52), and that Washington's obesity did not prevent her from performing a modified range of light work (tr. 52). Thus, the ALJ fully explained his "credibility" assessment. (Tr. 50-52). Washington cites no record evidence to undermine these findings, and the ALJ's credibility assessment is due to be affirmed.

## 2. SSR 16-3p

Next, Washington contends the issuance of Social Security Ruling ("SSR") 16-3p necessitates remand. (Doc. 10 at 24-28). SSR 16-3p, effective March 28, 2016, superseded SSR 96-7p, which was in effect when the ALJ issued his decision. SSR 16-3p eliminates the use of the term "credibility" and clarifies that the ALJ "will consider any personal observations of the individual in terms of how consistent those observations are with the individual's statements about his or her symptoms as well as with all of the evidence in the file." SSR 16-3p, 2016 WL 1119029, *7 (March 16, 2016). In a published opinion issued on November 6, 2017, the Eleventh Circuit ruled that SSR 16-3p does not apply retroactively. *See Hargress v. Soc. Sec. Admin., Comm'r*, 874 F.3d 1284, 1290 (11th Cir. 2017) ("SSR 16-3p applies only prospectively and does not provide

a basis for remand.").  Accordingly, the issuance of SSR 16-3p does not support remand, as it was not in effect at the time of the ALJ's decision.

### 3. Lack of Medical Treatment

Washington contends the ALJ improperly drew adverse inferences from her lack of medical treatment, which resulted in an adverse decision, even though she explained she had no insurance and no income.  (Doc. 10 at 30-32; doc. 14 at 8-10).  Again, Washington fails to develop this argument in her brief.  (*See* doc. 10 at 30-32).  Although Washington cites several statements in the ALJ's decision and testimony regarding her not obtaining medical treatment and claims the ALJ drew an adverse inference, she fails to identify the nature of any adverse inference the ALJ purportedly made or explain any prejudice she sustained as a result of the adverse inference. *See Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 903 (11th Cir. 2011) (applying the harmless error doctrine to social security cases); *see also Shinseki v. Sanders*, 556 U.S. 396, 408-10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.").

The ALJ is required to consider the overall record evidence in a case, which necessarily includes the extent of medical treatment a claimant receives. *See* 20 C.F.R. §§ 416.920(e), 416.929, 416.945(a)(1), (a)(3); SSR 96-8p, 1996 WL 374184 (July 2, 1996)). Washington has shown the ALJ considered her medical treatment, which the ALJ was required to consider; but she has not shown any improper inference the ALJ purportedly drew from that record evidence. Moreover, the ALJ's decision shows his RFC and credibility assessments were based on proper considerations, as explained above.  Washington has shown no error in the ALJ's consideration of the evidence to support remand.

**D. Appeals Council**

Washington next contends the Appeals Council improperly refused to consider new evidence. (Doc. 10 at 36-38; doc. 14 at 12-14). Almost fifteen months after the ALJ's decision, Washington submitted additional evidence to the Appeals Council. (Tr. 8-14, 19-22, 30-38, 234-238). The Appeals Council reviewed the additional evidence and found it did not provide a basis for changing the ALJ's decision because it "was about a later time" and did not affect the decision about whether Washington was disabled during the relevant period in this case from February 21, 2013, the SSI application date, through October 31, 2014, the ALJ's decision date (i.e., the relevant period) (Tr. 2).

Washington's argument that the Appeals Council failed to determine whether the additional evidence was chronologically relevant is unavailing. Evidence submitted to the Appeals Council must be new, material, and chronologically relevant to the ALJ's decision. *See* 20 C.F.R. § 404.970(b); *Ingram v. Comm'r, Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007); *see also Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir.1999). Although the additional evidence is "new" in the sense that it is dated after the ALJ's decision and not previously submitted, Washington has not shown the additional evidence is both material and chronologically relevant to the ALJ's decision.

As to the records from Northeast Alabama Regional Medical Center (tr. 30-38), Washington argues these records confirm the diagnoses of depression and post-traumatic disorder, as shown in earlier records. (Tr. 301-02, 382, 393, 402) (Doc. 10 at 36). Washington's argument is unavailing because the ALJ found Washington's depression was a severe impairment (tr. 43 Finding 2); therefore, additional post-decision evidence confirming that diagnosis is cumulative and not material. Similarly, evidence regarding PTSD is not material because Washington did not

claim disability due to PTSD, as explained above.

Similarly, despite her assertion to the contrary, Washington's records from Dr. Myron Wilson at Cherokee Eye Clinic (tr. 19-22) are not material. (*See* doc. 10 at 36). The ALJ noted Washington was diagnosed with diabetes mellitus in January 2014 (tr. 51), so no confirmation was necessary. The ALJ also found that there were no noted functional limitations from the diagnosis (i.e., there was no evidence of visual changes and eye examination showed 20/20 with lenses) (tr. 51), and Dr. Wilson's newly offered report (tr. 20-22) contains no information about limitations during the relevant period.

Finally, Washington posits that the January 11, 2016 report from Dr. Wilson at Gadsden Psychological Services (tr. 8-14) confirms the diagnoses of depression and post-traumatic stress disorder as shown in earlier records. (Doc. 10 at 36). However, as explained above, confirmation of diagnoses for those impairments is cumulative and not material. Washington also argues Dr. Wilson's report is chronologically relevant and material. (Doc. 10 at 37-38). She cites cases and statutes noting the proper standards of analysis; however, she offers no argument based on record facts and, instead, assumes the standards are satisfied here but they are not. 20 C.F.R. § 416.1470(b); *Wilson*, 179 F.3d at 1278-79 ("While [the physician's] opinion one year later may be relevant to whether a deterioration in [claimant's] condition subsequently entitled her to benefits, it is simply not probative of any issue in this case"). Washington fails to meet her burden of proving the additional evidence is material and chronologically relevant. Her challenges to the Appeals Council's findings do not warrant remand.

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying

Washington's claim for SSI is **AFFIRMED** and this action **DISMISSED WITH PREJUDICE.**

DONE this 20th day of March, 2018.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE